## STEPHAN, ESTATE OF, In re

Probate Court, Tuscarawas Co.

· Decided April 19, 1940.

Bernice L. Keplinger and Paul J. Gnau, Canton, for contestant.

W. W. Badger, Millersburg, for applicant.

### OPINION

By LAMNECK, J.

Edward V. Stephan died testate in Miami, Florida on or about February 27, 1940, leaving his widow, Gertrude Irene Stephan, and Carl E. Stephan, a son, and May E. Heddington, a daughter, as his next of kin.

An application to probate his will was filed in this court on March 20, 1940 by W. W. Badger of Millersburg. Ohio, who is named executor in the will. The widow contests the jurisdiction of this court to entertain the application under the provisions of §§10504-15 et seq. GC, on the ground that the domicile of the deceased at the time of his death is alleged to be Canton in Stark County, Ohio. The two children contend that the domicile of the deceased is the village of Baltic in this county. The only issue, therefore, to be determined by the court in this proceeding is the domicile of the testator at the time of his death.

The deceased conducted a business and had lived in Baltic for many years prior to his marriage to his present widow on July 9, 1939 in Winchester, Virginia. At the time of his marriage, Mrs. Stephan was a resident of Canton where she had worked in a rubber factory for a number of years.

The deceased owned several lots in Canton and on or about August 1, 1939, he started to build a residence on one of these lots: During the construction period, he lived with his wife in an auto trailer, across the street from the lots that he owned. They continued to

live in the auto trailer until October 1, 1939, when they left on an extended automobile trip to New York City, Callander, Ontario, the Pacific Coast, and elsewhere. They finally landed in Miami. Florida, where they spent the winter living in a trailer, and where the deceased committed suicide following a quarrel with his wife.

The widow introduced into evidence two automobile insurance policies dated September 12, 1939, a bill from G. E. Veigel dated September 26, 1939, a bill of C. E. Lahm dated September 26, 1939, a receipt of the Vagabond Coach Manufacturing Company of New Hudson, Michigan, dated October 6, 1939, and a receipt of The Ohio Power Company dated September 25, 1939; all of which give the decedent's address as Canton, Ohio. An automobile insurance service card dated September 12, 1940 gives his address as R. D. No. 2. Fulton Rd., N. W., Canton, Ohio. The receipt given by the Vagabond Coach Company on October 6, 1939, was for repairs to the trailer while the deceased and his wife were on their automobile trip. In addition, several witnesses testified that it was the intention of the deceased and his wife to occupy the residence which the deceased built in Canton on their return from the automobile trip, and that pending their return the house was rented to a Mr. and Mrs. Arthur Olshawsky.

The deceased owned a residence in Baltic in which he lived, prior to his second marriage, with his daughter and her husband. He owned nearly all of the furniture. After his marriage, his furniture remained in Baltic, with the exception of a small portable radio which he took to the trailer in Canton. The son-in-law testified that his living arrangements at Baltic remained the same after the marriage, because most of his clothes remained there, his wife did the decedent's laundry work, he came there repeatedly to take baths, and at regular intervals he took his meals there and remained overnight. He also testified that many of the decedent's private papers were left there

and that his bedroom remained the same after as before his marriage.

The deceased had sold his hardware store in Baltic to his daughter sometime before his marriage, but he retained other business interests there. He was a director of several corporations including the Baltic State Bank.

From the time the deceased was married until he left on his automobile tour, he received all of his mail at Baltic. The place where the trailer was located in Canton was on an R. F. D., but he never received mail there. He kept his checking account and his safety deposit box in the Baltic State Bank until his death.

When he purchased an automobile on August 30, 1939, he gave his residence as Baltic, and had his certificate of title registered in Tuscarawas County. He purchased a trailer in Canton on August 25, 1939, and in his own handwriting he gave his residence as Baltic, Ohio. He obtained his driver's license in Dover in this county on September 30, 1939, and in his application he gave his residence as Baltic. Bills for gasoline, etc., which the deceased purchased on credit cards while on his trip, were sent to Baltic, Ohio, some dated as late as February 23, 1940. One given by the Texas Company through Meyer & Meyer, 2761 S. W., Eighth Street, Miami, Florida, is dated February 1, 1940, and gives the decedent's address as Baltic, Ohio. Bills for supplies furnished in building the residence in Canton were also addressed to Baltic, Ohio.

Margaret A. Shutt, the decedent's sister, Henry Gerber, cashier of the Baltic State Bank, and A. R. Fisher of Baltic, testified that in separate conversations they had with the deceased after his marriage, he stated he intended to keep Baltic as his place of residence.

The decedent executed his will in the village of Millersburg. in Holmes County, on September 26, 1939. In the opening paragraph of the will, he uses this language:

"I, Edward V. Stephan **of the Village of Baltic,** in the county of Tuscarawas and State of Ohio."

**Sec. 10504-15 GC,** provides that "a will shall be admitted to probate only in the county in which the testator was domiciled at the time of his death." Mere residence is not synonymous with legal domicile. In law, domicile means the place where one has voluntarily fixed his habitation, not for a temporary or special purpose, but with the intention of making it his permanent home and to which whenever he is absent, he intends to return, (Bouvier's Law Dictionary). A domicile can only be changed by making a new home with the intention of abandoning the old and to adopt the new. For the purpose of succession, there is a presumption that an established domicile shall prevail until another has been proven to have been acquired in its stead.

To effect a change of domicile for the purpose of succession, there must be not only a change of residence, but an intention to abandon the former domicile, and acquire another as the sole domicile. There must be both residence in the adopted domicile, and intention to adopt such place of residence as the sole domicile. Intention alone will not do it, but residence and intention taken together do constitute a change. The burden of proving that a person has abandoned an established domicile and adopted a new is upon the party who asserts the change. (14 **O. Jur.,** p. 573 et seq; **In re Palmer, 28 O. N. P. (N.S.) 200; Cunningham v Trust Co., 39 Oh Ap 535, 178 N. E. 217; Larick v Walters, 39 Oh Ap 363, 177 N. E. 642.**)

A declaration in a will as to the maker's domicile is not regarded as conclusive. But if there has been no change in the situation of the testator with reference to that matter between the time the will was executed and his death, such as to show that he really intended to establish his residence or habitation elsewhere, such declaration is evidence of high character and will establish the domicile in the absence of more convincing proof to the contrary, (**Wilberding v Miller, 90 Oh St 28**).

While it is conceded that the decedent resided in a trailer in Canton with his wife for something over two months, there is no conclusive evidence to indicate that he had changed his domicile. In fact, the weight of the evidence is to the contrary. Nearly all of his furniture, a bed which he occupied. his papers, his bank account, his safety deposit box, and his residence property in which he had nearly all of his domestic property, were in Baltic. He did not change his mail address. The day before he left Canton in the trailer, he secured a driver's license in Tuscarawas County in which he gave his residence as Baltic. When he made his will, four days before he left on his trailer trip, he gave his residence as Baltic. While there is a bill in the evidence from the Vagabond Trailer Company in which he gave his residence as Canton, dated October 9, 1939, and some evidence that he intended to return to Canton, the court can not hold this to be conclusive. The evidence shows that in practically all instances where he was required to sign his name to an address, he gave his residence as Baltic.

The decedent was married on July 9, 1939. He started to live in the trailer about August 1, 1939. He made his will on September 26, 1939, in which he gave his residence as Baltic. He left on the trailer trip on October 1, 1939, and was still living in the trailer in Florida at the time of his death on February 27 1940. There was no change in the testator's situation with reference to his domicile from the time he made his will until the time of his death, except that the trailer had been in Florida for some time. Having lived in Canton in the trailer for only four days after he made his will, it would be more logical to say that his domicile was in Florida than in Canton,

460

The complaining party in this case has not proven that the deceased intended to remain indefinitely at the so-called residence in Canton, and there is likewise a lack of proof showing that he did not intend to return to his established home in Baltic.

The court therefore finds that the domicile of the decedent at the time of his death was at Baltic, Ohio, in Tuscarawas County, and that this court has full jurisdiction to entertain the application to probate his will.

Exceptions noted.